West Bradford Township Zoning Protest

*Perna & Delduco*, for petitioners.

KURTZ, J., January 6, 1967.—On February 21, 1966, documents bearing the following inscription and containing the purported signatures of a great number of property owners together with figures indicating the assessed values of each property owner's property were filed in the office of the prothonotary of this county: "We, the undersigned, property owners in West Bradford Township, do hereby protest against the exercise of the zoning powers given the supervi-

sors of said township by the Act of the General Assembly of Commonwealth of Pennsylvania of July 1, 1937, P. L. 2624, and its supplement, and we direct this protest to be filed in the Office of the Prothonotary of the Court of Common Pleas of Chester County as soon as owners of property of a total of fifty-one (51%) per cent of the total assessed valuation of real property in the Township have signed".

On September 30, 1966, James C. Hamilton and wife, asserting that they were residents and the owners of real property within said township, presented their petition to this court seeking to have the documents so filed struck from the record of the prothonotary's office. In the accomplishment of that end, their immediate prayer was for a rule directed to Earl W. Barwell and Henry Jefferies, who, they alleged, had circulated the documents in question for signature before their filing and to "all other interested parties" to show cause why such striking from the record should not be decreed. Upon the presentation of the petition, we directed that argument be heard upon it before the court en banc and that notice thereof be given to the board of supervisors. The supervisors have not sought to intervene. We have now heard argument and must decide whether or not to issue the rule.

The petition avers that the correct total assessed valuation of the real estate in the township is $4,718,-239 and that the signatures on the documents sought to be struck represent a total assessed valuation of $2,406,301.89; that said documents did not contain signatures of property owners of 51 percent of the assessed valuation of the township, since it purports to represent an assessed valuation of only $2,205,973; that the signatures of certain persons whose names are subscribed to the documents "are improper as to them for the reason that only one of the property owners signed", the purported signatures being those of

both husband and wife; that one set of property owners who are named, they being husband and wife, "signed . . . , because of misrepresentations made by Earl W. Barwell"; that certain of the assessment figures appearing on the documents, without pointing to any specific figures, are inaccurate; that certain of the signatures, without indicating which ones, "are not lawfully and properly signed"; that the board of supervisors "refused to take any action to have" the documents "removed and/or stricken"; and that said board refuses to take action "on a proposed zoning code for the township while the petition filed on February 21, 1966, is still a matter of record".

The provision of The Second Class Township Code under which the questioned documents would appear to have been filed, the Act of May 1, 1933, P. L. 103, sec. 2001, as last amended by the Act of July 13, 1953, P. L. 409, sec. 1, 53 PS §67001, provides: ". . . No ordinance shall be adopted to carry out the power hereby granted during the period of two years immediately after the date when taxpayers, whose property valuation as assessed for tax purposes within the township amounts to fifty-one per centum or more of the total property valuation as assessed for tax purposes within the township shall sign and file in the office of the prothonotary of the county in which the ownership is located, a written protest against the exercise of such powers".

As we understand petitioners' position, they assert that because the documents they seek to have struck have been filed in the office of the prothonotary of this county, an officer of this court, and have there received a number so that the fact of their filing has been recorded in one of the dockets maintained in that office, such documents became a part of the records of this court over which we may exercise jurisdiction, and that, having thus acquired jurisdiction over them, we

may and should, on an application such as is here made, inquire into the validity of the signatures appearing upon them and then make a determination as to whether or not the valid signatures thereon represent 51 percent of the total assessed property valuation of the township.

We think that that position is not well taken. In our view, the legislature's designation of the prothonotary's office as the place for the filing of such protests means only that that office is designated as being an appropriate place to which interested persons might go to determine whether or not such protests have been filed and to there inspect such of them as are filed. If the protests are not valid, as, for example, if they do not contain the required number of signatures, the supervisors, if they are so disposed, are free to enact a zoning ordinance notwithstanding the filing of the protests. On the other hand, if the supervisors, in spite of the protests filed, adopt an ordinance, the legality of the ordinance so adopted may then be tested in the court of quarter sessions, as provided by the appropriate provisions of the township code. See Re: Complaint as to Legality of East Whiteland Township Zoning Ordinance of 1953, 6 Chester 172 (1954).

The fact that the legislature has selected the prothonotary's offices of the various counties as a repository of public information is not unique to zoning matters. For example, it has provided that those who conduct business under a fictitious name shall register the name in that office. See the Act of May 24, 1945, P. L. 967, sec. 1, as amended by the Act of September 23, 1959, P. L. 936, sec. 1, 54 PS §28.1, and the Fictitious Corporate Name Act of July 11, 1957, P. L. 783, sec. 1 et seq., 54 PS §81. It has also designated that office as the place for the registration of the official signatures of notaries public. See the Act

of August 21, 1953, P. L. 1323, sec. 9, as amended by the Act of July 22, 1965, P. L.—, No. 122, sec. 1, 57 PS §155. The fact that the prothonotary's office is named as the office in which information of these types is recorded and preserved for public accommodation does not have the effect of making such information a matter of record in this court.

We think that to enter upon the inquiry which petitioners would have us make would be to undertake an inquiry in a vacuum. Although petitioners allege that the supervisors will not act upon a proposed zoning code so long as the questioned protests remain on file, there is no assurance upon this record that the supervisors will so act, even though the protests are removed. By the same token, neither we nor petitioners now know what form the zoning legislation which might be adopted, if the protests were removed, might take. Although petitioners would appear to have a certain proposed ordinance in mind which they believe will be beneficial to them and their land, it is conceivable that when the supervisors act, if they do, they may adopt an entirely different ordinance, and petitioners would then find that their property and that of their adjacent neighbors would be zoned in a way which would not meet their desires. We can understand that this last observation is not germane to the present discussion, but we think that it is appropriate for us to point out that by our granting of the prayer of the present petition, we would have accomplished nothing. Whether or not there shall be zoning in West Bradford Township is a decision which the board of supervisors alone can make.

Petitioners are not without their remedy. They may, as they apparently have, attempt to convince the supervisors of the soundness of their position, and if they are successful, to then urge upon that board the adoption of an ordinance which is to their liking. If

502

they are unsuccessful in their overtures to that board, they would still have recourse to the ballot box, and if there are enough like-minded electors within the township, they can elect a board of supervisors more sympathetic to their position. We are not permitted to here substitute our judgment for that of the governing body of the township. We do not sit as a supreme board of supervisors.

ORDER

And now, January 6, 1967, the petition of James C. Hamilton and Gloria A. Hamilton, his wife, filed in said cause on S e p t e m b e r 30, 1966, is hereby dismissed.